# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| **PATRICK HALL**<br>    LA. DOC #534084<br>VS.<br><br>**MOREHOUSE PARISH JAIL, ET AL.** | **CIVIL ACTION NO. 09-1131**<br><br>**SECTION P**<br><br>**CHIEF JUDGE JAMES**<br><br>**MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

*Pro se* petitioner Patrick Hall, proceeding *in forma pauperis*, filed the instant civil rights complaint (42 U.S.C. §1983) on July 2, 2009. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC). He is currently incarcerated at the Morehouse Parish Detention Center (MPDC), Collinston, Louisiana; however, he complains that his commissary privileges were restricted and he was denied access to an adequate prison grievance procedure while he was incarcerated at the Morehouse Parish Jail (MPJ), Ruston, Louisiana. Plaintiff sues MPJ Commissary Officer Tommy Cooper, an unidentified MPJ Corporal, Booking Officer Jackie Lee, Sgt. Mansfield, Assistant Warden Isaac Brown, Warden Billy Harris and Morehouse Parish Sheriff Mike Tubbs and prays for injunctive relief, declaratory relief, and monetary damages of $75,387.42. Plaintiff also requests appointment of counsel. [Doc. 3]

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous and that plaintiff's Motion to Appoint Counsel [Doc. 3] be **DENIED.**

### *Background*

Plaintiff is an inmate in LDOC custody. Sometime prior to May 19, 2009, he was

incarcerated at the MPJ. From May 19, 2009, to June 23, 2009, his commissary privileges were restricted without reason by the prison's Commissary Officer, Deputy Tommy Cooper, who "...took it upon himself to close [plaintiff's] inmate work release account without verbal or written consent from [plaintiff]..."

On June 1, 2009, plaintiff submitted a First Step Grievance; on June 4, 2009, plaintiff received the First Step Response from Sgt. Era J. Mansfield. However, according to plaintiff, Mansfield allowed Dy. Cooper to write the response. Thereafter, Corporal Alan, Dy. Lee and Dy. Cooper, and Sgt. Mansfield "insisted" that plaintiff withdraw his grievance.

On June 29, 2009, plaintiff advised Asst. Warden Isaac Brown that he had not yet received a Second Step Response and the 25-day deadline for receiving the Response had expired. Brown advised plaintiff that he was unaware of plaintiff's grievance. According to plaintiff, Brown's failure to timely respond to the Second Step Grievance amounted to a violation of La. R.S.15:1171. Plaintiff requested an opportunity to discuss the matter further with Asst. Warden Brown, but his request was ignored; his family's efforts to discuss the matter with the Sheriff also proved futile.

According to plaintiff, he submitted approximately 23 grievances between December 2008 and July 2009 and he has "... yet to receive a completed grievance form [until] this very day..." He also complains that the defendants "... take reprisals against inmates for the good faith participation in the A.R.P. Process..." He further defines "reprisal" as "... a threat or disciplinary action..."

On June 21, 2009, the Assistant Warden investigated plaintiff's commissary restriction complaint and on June 23, he re-opened plaintiff's account. Plaintiff's commissary restrictions were lifted the following day.

2

Sometime prior to July 31, 2009, plaintiff was transferred to the MPDC.

*Law and Analysis*

*1. Screening*

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Furthermore, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A complaint is frivolous if it lacks an arguable basis in fact (i.e. the facts are clearly baseless, a category including allegations that are fanciful, fantastic, or delusional). *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir.1995); *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); *Denton v. Herndandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

Plaintiff's original complaint sets forth his claim and the basis for his cause of action. He need not be permitted further amendment because his claims – taken as true for the purposes of this report – are manifestly frivolous.

## *2. Temporary Loss of Commissary Privileges*

Plaintiff's underlying complaint is that his prison commissary privileges were wrongfully denied for a period of a little more than one-month from May 19, 2009 to June 23, 2009.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).[1] Plaintiff has not demonstrated the violation of a right guaranteed by the Constitution or laws of the United States.

### a. Due Process

To the extent that plaintiff contends that the month long deprivation of commissary privileges violated his rights to due process as guaranteed by the Fourteenth Amendment, such contention is clearly frivolous. State-created liberty interests protected by the Due Process Clause are generally limited to freedom from restraint imposing an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The interests protected by the Due Process Clause "... are generally limited to state-created regulations or statutes which affect the quantity of time rather than the quality of time served by a prisoner." *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir.1997). The loss of commissary privileges does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 115 S.Ct. at 2299. Therefore, plaintiff's claim concerning the loss of commissary privileges does not implicate due process concerns and thus is subject to dismissal as frivolous. See *Madison*, 104 F.3d at 768 (concluding that imposing thirty days of commissary and cell restrictions as punishment constitutes mere changes in the conditions of a prisoners confinement and do not implicate due process concerns).

### b. Cruel and Unusual Punishment

---

[1] Section 1983 provides in pertinent part, "Every person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...." 42 U.S.C. § 1983.

Further, to the extent that plaintiff maintains that the denial of commissary privileges implicates the Eighth Amendment's prohibition of cruel and unusual punishment, his claim fares no better. "The Constitution does not mandate comfortable prisons ... but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999) quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995). Under the Eighth Amendment, prison officials are required to provide humane conditions of confinement, ensuring that inmates receive adequate food, clothing, shelter and medical care; and, they must take reasonable measures to guarantee the safety of the inmates in their custody. See *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Plaintiff has not identified a constitutionally protected right to commissary privileges. Indeed, those courts which have considered the issue have arrived at the conclusion that there is no such right.[2] In other words, plaintiff's allegations, taken as true, fail to establish a violation of the Constitution and laws of the United States and therefore his commissary claim must be dismissed as frivolous.

*3. Prison Grievance*

Plaintiff also complains that the defendants have denied him a right to fully participate in the prison grievance procedure. In *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court left prisoners without a federally-protected right to have grievances investigated and resolved. Any right of that nature is grounded in state law or

---

[2] Compare *Ward v. Oliver*, 1994 WL 66652, *3 (7th Cir.1994) (Eighth Amendment contemplates only shelter, sanitation, food, personal safety, medical care, and clothing and does not dictate access to particular commissary items); *Allen v. DeTella*, 1997 WL 106098, *4 (N.D.Ill.1997) (commissary restrictions on particular foods did "not constitute atypical and significant hardships on an inmate"); *Davie v. Wingard*, 958 F.Supp. 1244 (S.D.Ohio 1997) (denial of commissary privileges did not state a claim under the Eighth Amendment).

6

regulation and the mere failure of an official to follow state law or regulation, without more, does not violate constitutional *minima*. See *Taylor v. Cockrell*, 2004 WL 287339 at *1 (5th Cir. Feb.12, 2004) (not designated for publication) (holding that "claims that the defendants violated ... constitutional rights by failing to investigate ... grievances fall short of establishing a federal constitutional claim"); *Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005) (Prisoners do not have a federally protected liberty interest in having their grievances resolved to their satisfaction; any alleged due process violation arising from the alleged failure to investigate prisoner grievances is indisputably meritless); (see also *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 138, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977) (Burger, C.J., concurring) (applauding the institution of grievance procedures by prisons but not suggesting that such procedures are constitutionally required); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) ("[T]he constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993) (quotation omitted) (holding that a prison grievance procedure is not a substantive right and "does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment"); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991 *(per curiam)* (concluding regulations providing for administrative remedy procedure do not create liberty interests in access to that procedure); and *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988) ("There is no legitimate claim of entitlement to a grievance procedure.").

Since there is no constitutionally protected right to participate in a prison grievance

procedure, plaintiff's grievance claim is also frivolous.[3]

---

[3] Further, a liberal reading of the complaint belies plaintiff's contention that he was denied the right to participate in the administrative remedies procedures adopted by LDOC and MPJ. Plaintiff is an inmate in the custody of LDOC and was in their custody upon his entry into MPJ. Administrative remedies procedures have been adopted by the Louisiana Department of Public Safety and Corrections, sheriff's maintaining parish jails or correctional centers, and even private corporations maintaining correctional centers. See LSA R.S. 15:1171 *et seq*.; 22 LA ADC Pt. I, § 325(LAC 22:I.325); LR 28:857 (April 2002); 28:4 La.Reg. 857. In relevant part, the regulations governing administrative remedies for prisoners in the custody of the Louisiana Department of Public Safety and Corrections provide:

"G. Process

1. First Step (Time Limit 40 days)

a. <u>The inmate commences the process by writing a letter to the warden, in which he briefly sets out the basis for his claim, and the relief sought</u> ... This letter should be written to the warden within 30 days of an alleged event. (This requirement may be waived when circumstances warrant. The warden, or his designee, will use reasonable judgment in such matters.) The requests shall be screened by the ARP Screening Officer and a notice will be sent to the inmate advising that his request is being processed or is being rejected. The warden may assign another staff person to conduct further fact-finding and/or information gathering prior to rendering his response. <u>The warden shall respond to the inmate within 40 days from the date the request is received at the First Step.</u>

b. For inmates wishing to continue to the Second Step, sufficient space will be allowed on the response to give a reason for requesting review at the next level. There is no need to rewrite the original letter of request as it will be available to all reviewers at each Step of the process.

2. Second Step (Time Limit 45 days)

a. <u>An inmate who is dissatisfied with the First Step response may appeal to the Secretary of the Department of Public Safety and Corrections by so indicating that he is not satisfied in the appropriate space on the response form and forwarding it to the ARP Screening Officer within 5 days of receipt of the decision</u>. A final decision will be made by the Secretary and the inmate will be notified within 45 days of receipt. A copy of the Secretary's decision will be sent to the warden.

\* \* \*

4. Deadlines and Time Limits

a. No more than 90 days from the initiation to completion of the process shall elapse, unless an extension has been granted. Absent such an extension, <u>expiration of response time limits shall entitle the inmate to move on to the next Step in the process</u>. Time limits begin on the date the request is assigned to a staff member for the First Step response."

Thus, when the MPJ administration failed to respond to plaintiff's grievance within the time limitations established by the Louisiana regulation, plaintiff was entitled to submit his grievance to the LDOC Secretary.

In other words, he has not even shown how the MPJ's failure to timely respond resulted in the loss of any rights guaranteed under Louisiana law.

*4. Retaliation*

Plaintiff further alleged that the defendants "... take reprisals against inmates for the good faith participation in the A.R.P. Process..." He further defined "reprisal" as "... a threat or disciplinary action..." Plaintiff thus implies that he was the victim of retaliation.

To state a valid claim for retaliation under §1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir.1999).

Prisoners are constitutionally protected from retaliation for complaining about a prison official's actions to a supervisor. See *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir.1995); Jackson v. Cain, 864 F.2d 1235, 1248 (5th Cir.1989). The Fifth Circuit has held that some acts that may be motivated by retaliatory intent, "are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim." *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir.2006).

Here, plaintiff has implied that he was threatened with disciplinary action should he continue filing grievances. However, plaintiff has not alleged that he was in fact the victim of such reprisals. Further, even if he was threatened, he has not shown that these threats inhibited him from employing the grievance procedure. These threats did not inhibit him from filing over 23 grievances and two federal lawsuits.[4] Plaintiff's claim of retaliation is likewise frivolous.

*5. Appointment of Counsel*

Plaintiff has requested appointment of counsel. Congress has not specifically authorized

---

[4] See also *Patrick Hall v. Morehouse Parish Detention Center, et al.*, No. 3:09-cv-1476.

courts to appoint counsel for plaintiffs proceeding under 42 U.S.C. §1983. "Generally no right to counsel exists in §1983 actions [but] appointment of counsel should be made as authorized by 28 U.S.C. §1915 where 'exceptional circumstances' are present." *Robbins v. Maggio*, 750 F.2d. 405 (5th Cir. 1985). Pursuant to 28 U.S.C. §1915(e)(1), federal courts are given the power to <u>request</u> that an attorney represent an indigent plaintiff. (In the case of *Mallard v. United States District Court for the Southern District*, 490 U.S. 296, 301-302, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989) the United States Supreme Court held that federal courts can only request that an attorney represent a person unable to employ counsel because federal courts are not empowered under 28 U.S.C. §1915(e)(1) to make compulsory appointments.)

Although courts can request that an attorney represent an indigent plaintiff, the court is not required to make this request in the absence of "exceptional circumstances." See *Ulmer v. Chancellor*, 691 F.2d. 209, 212 (5th Cir. 1982) and *Jackson v. Cain*, 864 F.2d. 1235, 1242 (5th Cir. 1989). No precise definition of "exceptional circumstances" is available, but the United States Courts of Appeal have provided a litany of factors for lower courts to consider in determining whether the plaintiff is entitled to have the court request that counsel assist him in his suit. It is proper for the court to consider the following factors: (1) the type and complexity of the case; (2) the plaintiff's ability to adequately present and investigate her case; (3) the presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of evidence and cross-examination; and (4) the likelihood that appointment will benefit the petitioner, the court, and the defendants by "shortening the trial and assisting in just determination." See *Parker v. Carpenter*, 978 F.2d. 190 (5th Cir. 1992), citing *Murphy v. Kellar*, 950 F.2d. at 293, n.14; see *also Ulmer*, 691 F.2d. at 213, and *Jackson*, 864 F.2d. at 1242. Additionally, a court may consider whether a plaintiff has demonstrated the inability to secure

private counsel on his own behalf. See *Jackson*, 864 F.2d. at 1242; *Ulmer*, 691 F.2d. at 213. Plaintiff is not excused from trying to procure counsel for himself.

Plaintiff has managed to file an original complaint setting forth various causes of action against various named defendants; he has also filed various motions in Alabama and Louisiana including amended complaints and a motion for injunction. His original and amended complaints set forth individually numbered paragraphs detailing his claims against each defendant; he has provided various exhibits and documents in support his claims.

His claims for relief are not necessarily atypical of those often asserted by prisoners in civil rights litigation and are not complex. Plaintiff has first hand knowledge of the facts which form the basis of this action and needs no assistance in recounting those facts to the court. Based on the quality of the pleadings and supporting documentation submitted thus far, the undersigned is convinced that petitioner is capable of adequately presenting his case. Further, as is noted hereinafter, plaintiff's claims are frivolous and should not survive initial review. Thus, appointment of counsel would benefit neither the plaintiff nor the Court.

Accordingly, plaintiff's request for appointment of counsel should be denied as the circumstances presented herein are not "exceptional" so as to warrant the appointment of counsel.

In short, plaintiff's claims are either manifestly frivolous or fail to state a claim for which relief may be granted and dismissal on that basis is recommended.

### *6. Conclusion, Order, and Recommendation*

Therefore, plaintiff's Motion for Appointment of Counsel [Doc. 3] is **DENIED;**

Further,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH**

**PREJUDICE** as frivolous in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, October 6, 2009.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE